Stacy Y. North (SBN 219034)
BERMAN NORTH LLP
2225 E, Bayshore Road, Suite 200
Palo Alto, CA 94303
Phone: (650) 320-1685
Email: stacy@bermannorth.com

Attorneys for Plaintiff, Robert Hwang, Ph.D.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HWANG, PH. D, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL TECHNOLOGY AND ENGINEERING SOLUTIONS OF SANDIA, LLC, a limited liability company,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF TITLE VII (42 U.S.C. §2000(E), ET SEQ.) AND CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (CAL GOV. CODE§12940)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, ROBERT HWANG, PH.D., by and through his counsel of record, Stacy Y. North, Berman North, LLP, alleges:

## PARTIES

1. Plaintiff, Dr. Hwang, is an East Asian American and was Center Director, from 2014 until January 2020, of the Combustion Chemistry and Material Sciences at Sandia National Laboratories (SNL), which center is located in Livermore, California. Dr. Hwang was a resident of California while he served as Center Director.

2. Defendant National Technology and Engineering Solutions of Sandia, LLC (NTESS), is a Delaware limited liability company registered as a foreign LLC in the state of California.

3. In 2016 NTESS was awarded the United States Department of Energy (DOE)

**COMPLAINT; DEMAND FOR JURY TRIAL**

management and operations contract for the operation of SNL, which is principally located in Albuquerque, New Mexico.

4. NTESS was the employer of Dr. Hwang from 2017 until the termination of his employment in January 2020, which termination became effective on March 12, 2020.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the subject matter of some of Plaintiff's claim are premised on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a). Supplemental jurisdiction of Plaintiff's state law claims set forth herein are premised on 28 U.S.C. § 1367.

6. Venue is properly before this Court pursuant to 28 U.S.C. §1391(b)(2).

## EXHAUSTION OF REMEDIES

7. Dr. Hwang timely filed claims of discrimination and retaliation against Defendant pursuant to 42 U.S.C. §2000(e) *et seq.* with the EEOC as Charge No. 39B-2020-00600 on January 28, 2020, and with the California Department of Fair Employment and Housing (DFEH) on May 29, 2020, as DFEH No. 202005-10284129. Dr. Hwang received Right to Sue letters from DFEH on May 29, 2020 and from the EEOC on October 14, 2020, copies of which are collectively attached to the Complaint as Exhibit 1.

## GENERAL ALLEGATIONS

8. Dr. Hwang has a Ph.D. in physics from the University of Maryland and did post-doctoral work at the University of California, Berkeley from January 1989 to May 1990 and was an Alexander von Humboldt Fellow at the University of Munich, Germany, from June 1990 through October 1991.

9. Dr. Hwang was born in Macao while his family was immigrating to the United States from China. He and his family arrived in the United States in 1964 and Dr. Hwang became a United States' citizen in 1973.

10. Dr. Hwang first became employed with SNL in October 1991 and during his career with SNL held various leadership positions, including positions in Sustainable Transportation, Energy, Climate and Infrastructure Security, Nanotechnologies and Electricity

BERMAN NORTH LLP
2225 E. Bayshore Road, Suite 200, Palo Alto, CA 94303
Phone: (650) 320-1685

1  and Energy Delivery.

2  11.   In December 2013, Dr. Hwang was promoted to the position of Director of
3  Combustion Chemistry and Material Sciences also referred to as Center 8300. SNL's
4  functions and programs are divided into seven (7) centers and each center is led by a Director.
5  Directors are considered part of Senior Management of SNL.

6  12.   Center 8300 is comprised of three (3) sections: Material Sciences (8340),
7  Chemical Sciences (8350) and Engineering and Transportation Sciences (8360). There are
8  approximately one hundred twenty (120) employees within Center 8300, and most of those
9  employees are Ph.D.'s.

10  13.   SNL is one of the United States government's national laboratories and is
11  under the jurisdiction of United States DOE. DOE operates SNL through contract
12  management agreements with non-governmental organizations.

13  14.   There are approximately twelve thousand (12,000) employees at SNL, which
14  is now under the management and operation of NTESS.

15  15.   When Dr. Hwang was appointed Director of Center 8300, Lockheed Marietta
16  was the contract manager for SNL. In 2016, the DOE awarded the management contract for
17  SNL to NTESS, which is a subsidiary of Honeywell, International, Inc., a Delaware
18  corporation.

19  16.   NTESS took over management and operation of SNL in the spring 2017, and
20  at that time, Dr. Hwang's immediate supervisor became Doris E. Ellis (Ellis) who was then an
21  associate lab director.

22  17.   Dr. Hwang's annual performance evaluations were always favorable until Ellis
23  and later Andrew McIlroy (McIlroy) became Dr. Hwang's director supervisors.

24  18.   Dr. Hwang was the only East Asian American Director.

25  19.   In 2017 and 2018, after NTESS became his employer, his performance
26  evaluations were overall favorable; but Ellis began to include vague, ambiguous and critical
27  comments in his evaluations, such as "Bob's focus is more acutely on 8300 (the Center he
28  directs) and his program areas. I expect to see him more engaged in the division in the labs in

BERMAN NORTH LLP
2225 E. Bayshore Road, Suite 200, Palo Alto, CA 94303
Phone: (650) 320-1685

COMPLAINT; DEMAND FOR JURY TRIAL

the future", "work on engaging people in a way that they want to work with him and feel like their needs are taken into account", "I expect leaders to grow as a team", "the feedback this year indicates that there may still be some remaining issues around executing on requirements in areas where he doesn't agree with laboratory policy", and "I find I can't be subtle with him".

20. Ellis treated Dr. Hwang differently than the other six (6) non-East Asian American Directors. She was highly critical of his program interest; until the same program that she criticized Dr. Hwang for being interested in was put forward by others who were non-East Asian, then she would readily accept them in a positive manner.

21. In 2017, Ellis asked for capital equipment requests from all the directors, which is an annual process.  Dr. Hwang submitted a request for $1M to procure a laser system for his Center.  At a meeting with Ellis and the other Directors, all requests were discussed, and Dr. Hwang followed up to revise his request to $400K.  Ellis criticized Hwang saying that she had clearly denied the system and that revising the request was insubordination.  Hwang stated to her that he did not hear the request rejection.  Hwang followed up with Jeff Gebel (acting director of operations and was sitting next to Hwang that the meeting) to check if Ellis had rejected the request.  Gebel said he had not heard that either.  In addition, the staff member who was facilitating the meeting had not heard of the rejection, or she would not have modified it, along with other changes, in the updated request sheet.  Hwang stated several times to Ellis that it was a miscommunication and not an act of insubordination.  No other director was accused of insubordination for modifying requests for further consideration.

22. In September 2018, a meeting of the External Advisory Board for SNL, a very important and influential Board for programs and projects of SNL, was scheduled at SNL in Albuquerque. All Directors were preparing to make presentations to the Advisory Board. When the agendas came out before the scheduled meeting, Dr. Hwang was the only Director omitted as a presenter. Dr. Hwang learned that Ellis had unilaterally cancelled his presentation without notifying him. Ellis gave no explanation for removing Dr. Hwang from the program.

**COMPLAINT; DEMAND FOR JURY TRIAL**

On the second day of the External Advisory Board meeting, Dr. Hwang had previously been given a time slot to discuss Center 8300's transportation program. During his presentation, he was abruptly and rudely interrupted by Ellis and cut off before the end of his presentation. It was very embarrassing to Dr. Hwang and several members of the External Advisory Board commented to Dr. Hwang how sorry they were that they could not hear his complete presentation.

23. On several occasions, Ellis pointedly criticized Dr. Hwang for spending too much time "thinking about science" which is an absurd criticism since science is the foundation of the Center 8300 and SNL's missions include use of science and technology, innovative research and global engagement to counter threats, reduce dangers and respond to disasters.

24. From the time Ellis became Dr. Hwang's supervisor, she displayed micro-aggressive behaviors toward Dr. Hwang, especially when she was criticizing Dr. Hwang for not speaking up more during meetings. Dr. Hwang was very familiar with this biased attitude toward East Asian Americans who are raised in a traditional East Asian culture.

25. Dr. Hwang was the Director champion of the Asian Public Leadership Council and published a blog on SNL's intra-communications about the challenges of being raised in a traditional Asian culture and attaining and maintaining leadership roles in the American corporate settings where the corporate leaders, managers and supervisors are unfamiliar with Asian traditions and cultures. In May 2018, Dr. Hwang wrote an article for the internal SNL publication and the title of his article was "*Appreciating the Values of Quieter Voices – An Asian American Perspective*". In the article, Dr. Hwang explained that Asian traditional culture values of waiting to speak until one considers carefully what one is going to say and why; which is often perceived as being uninterested or having nothing to contribute, which is the same discriminatory attitude and prejudice reflected in criticisms made against him by Ellis.

26. In early November 2018, Dr. Hwang met with Ellis to express his concern that she was being overly critical of one of Center 8300's projects – Low Energy Electronic

BERMAN NORTH LLP
2225 E. Bayshore Road, Suite 200, Palo Alto, CA 94303
Phone: (650) 320-1685

1  Initiative. Dr. Hwang had sent her four to five peer reviewed articles on the topic. Instead of
2  reading the articles and discussing her opinions about those publications, she accused him of
3  "cherry picking articles" to support the Low Energy Electronic Initiative. Dr. Hwang was
4  concerned because Ellis was treating him in a different manner and displaying a different
5  attitude and conduct toward him compared to the other six non-East Asian American
6  Directors. He asked Ellis how he could improve his relations with her and she suggested more
7  frequent meetings. Dr. Hwang agreed and offered to set up the meetings; but Ellis responded
8  she would set up the meetings. Ellis never set up any other meetings to improve relations with
9  Dr. Hwang.

10  27.  Other Senior Managers and Dr. Hwang's executive coach observed and
11  commented on the animosity both Ellis and McIlroy were showing toward Dr. Hwang as
12  compared to other Directors.

13  28.  Ellis and McIlroy did not support the Low Energy Electronic Initiative; but the
14  DOE did support the proposal and in August 2019, McIlroy, then Dr. Hwang's direct
15  supervisor, asked Dr. Hwang to lead the Initiative for the Low Energy Electronic Initiative.
16  That Initiative under Dr. Hwang's leadership began in October 2019, just two (2) months
17  before Ellis and McIlroy issued a Performance Improvement Plan (PIP) to Dr. Hwang
18  indicating their intent to terminate his employment.

19  29.  On June 25, 2019, Ellis summoned Dr. Hwang to her office where she verbally
20  attacked him and threatened his job because of "concerns that have come to my attention
21  about management and leadership of 8300". Ellis would not identify the source or the
22  specifics of the concerns, except to make reference to a matter that occurred in 2016, which
23  had been resolved in Dr. Hwang's favor. Ellis acknowledged that Dr. Hwang had been
24  assigned as the Chief Research Officer for the DOE/BES Triennial Recertification of the
25  Center for Integrated Nanotechnology (CINT) and along with his Director duties for 8300, Dr.
26  Hwang was under a heavy work load of duties and responsibilities. Ellis then stated broad,
27  general and vague accusations that "as a leader and Manager of Managers, your job is to
28  assure Managers and Senior Managers are competent to do their jobs and then you hold them

**COMPLAINT; DEMAND FOR JURY TRIAL**

accountable to execute work performance". There had been no complaints that any of 8300's Senior Managers were incompetent or were not executing their job duties. Ellis continued her attacks with "I've been told that you and your Senior Managers engaged in less than a professional way when a deliverable did not meet your expectations". Ellis gave no specifics of what she was referring to or what conduct or statements were deemed unprofessional. Then Ellis criticized Dr. Hwang for his active participation in hiring foreign nationals for post-doctoral positions, which Dr. Hwang viewed as a critical part of his Director responsibilities. Ells had not brought up any of those criticisms of Dr. Hwang before voicing them on June 25, 2019, in a hostile and threatening manner.

30. Dr. Hwang promptly provided a written response to Ellis' criticisms on June 27, 2019.

31. Ellis wrote a rebuttal to Dr. Hwang's responses, but she failed to schedule any follow-up meetings with Dr. Hwang about the accusations and criticisms she made to him on June 25, 2019. Not long after that June 25, 2019 meeting, McIlroy became Dr. Hwang's direct supervisor. McIlroy scheduled no meetings, nor discussions with Dr. Hwang regarding the criticisms that Ellis had made against him. Ellis had been promoted to a Deputy Lab Director position; but she was still in Dr. Hwang's chain of supervision.

32. Dr. Hwang's 2018 Performance Evaluation given to him in January 2019 indicated that he performed at expectations as Director of 8300 and that the Center was running effectively and that all deliverables were on schedule and deadlines were met and the Center was maintained in a safe and secure operation within budget and program planning.

33. Only after supervising Dr. Hwang for a few months, McIlroy completed Dr. Hwang's annual Performance Evaluation for 2019 and for the first time in Dr. Hwang's career, the overall/summary evaluation indicated he did not meet expectations. In the evaluation, McIlroy admits he has a limited experience supervising Dr. Hwang, yet McIlroy writes a subjective conclusion that Dr. Hwang's inability to accept and apply feedback is negatively impacting his ability to lead and manage. McIlroy provided no specific examples

BERMAN NORTH LLP
2225 E. Bayshore Road, Suite 200, Palo Alto, CA 94303
Phone: (650) 320-1685

and his negative conclusion is contradicted by admissions in the same Performance Evaluation that points out Center 8300 is operating safely, securely, leading the D8K Science Plan in place, and that Dr. Hwang has stepped up his engagement in 8300. The evaluation continues that he frequently overcomes challenges, is accountable for getting results, focuses on making things better, understands what SNL's sponsors and customers really need and delivers on those needs, promotes confidence and trust, innovates, tests, tries and takes thoughtful risk, that he translates the best ideas into realistic, pragmatic and executable plans, and he is comfortable challenging the status quo and takes seemingly impossible goals and is willing to work out of his comfort zone.

34. In 2019 Center 8300, under Dr. Hwang's Director leadership, met all of its performance and operational goals, expectations and operated within budget. There is no mention in either Ellis' June 25, 2019 performance discussion; or the 2019 evaluation that Center 8300's mission, work, or operations were not meeting Sandia and DOE's mission goals and objectives. The personal attacks on Dr. Hwang by Ellis and McIlroy were based on subjective, biased (explicit and implicit), prejudiced and were motivated by discriminatory attitudes, conduct and demeanor.

35. A few weeks after issuing Dr. Hwang's first and only "fails to meet" performance evaluation, McIlroy issued, on December 16, 2019, a Performance Improvement Plan (PIP) giving Dr. Hwang 24 hours to develop a sixty day performance plan, or either resign or appeal to an executive review committee. The performance improvement document included new allegations against Dr. Hwang that had never been discussed with him and were not included in the 2019 Performance Evaluation.

36. Dr. Hwang knew and understood from his years of experience as a Supervisor, Manager and Director that issuing him a PIP meant Defendant intended to fire him. Ellis and McIlroy had told him that they intended to remove him from the Director position prior to issuing the PIP, and they tried to pressure him into taking a demotion.

37. Fearing an involuntary termination would jeopardize his retirement eligibility, Dr. Hwang announced his intent to retire on December 17, 2019, the day after he received

**COMPLAINT; DEMAND FOR JURY TRIAL**

BERMAN NORTH LLP
2225 E. Bayshore Road, Suite 200, Palo Alto, CA 94303
Phone: (650) 320-1685

the PIP.

38. A few weeks later, Dr. Hwang was informed by the SNL HR Benefits representative that he would be eligible for his retirement whether he was involuntarily terminated or not. Dr. Hwang then decided to rescind his retirement announcement, present his action plan and resume his duties. On January 29, 2020, Dr. Hwang notified Ellis and McIlroy of his intent to return to his Director position immediately. Dr. Hwang knew that his position had not been filled as one of the Senior Managers he supervised was serving as the Interim Director, until a full time Director could be found.

39. On January 25, 2020, Dr. Hwang filed a Charge of Discrimination based on race and national origin with the EEOC as Charge No. 39B-2020-00600 and a copy of that EEOC Charge was emailed and received by Ellis, McIlroy and Defendant on January 29, 2020.

40. On January 29, 2020, Dr. Hwang submitted his written notice of his rescission of his retirement and his intent to immediately resume his Director duties. On the same date, Dr. Hwang also submitted the sixty day action plan to Ellis and McIlroy. In the action plan, Dr. Hwang pointed out his concerns of discriminatory treatment by McIlroy and Ellis who were treating him differently than other non-East Asian American Directors, and in his action plan, he proposed positive and constructive resolutions that conformed to SNL's missions regarding diversity in the workplace.

41. In the action plan, Dr. Hwang expressed concerns that both Ellis and McIlroy, both Anglos, were treating Dr. Hwang differently as the only East Asian Director, compared to the other Directors, and they were applying different standards to his conduct and behavior than other Directors. He explained how Ellis and McIlroy were demonstrating personal animosity toward him and publicly embarrassing and humiliating him. Dr. Hwang explained that Ellis' critiques of him for not speaking up in meetings betrayed her bias and prejudice against East Asian Americans, whose culture teaches them to be quiet and only speak up in meetings after having thoroughly thought through the topics and having something constructive to say. Dr. Hwang pointed out in the action plan the examples of Ellis and

**COMPLAINT; DEMAND FOR JURY TRIAL**

McIlroy's frequent micro-aggressions with their body language, insulting and demeaning statements that went as far as to compare Dr. Hwang to the head of a fish. Dr. Hwang pointed out in the action plan, SNL's values and behaviors that require they embrace diversity and inclusion and that as Senior Managers, SNL requires that they foster multiple perspectives and promote acceptance of different learning and working styles. Dr. Hwang requested that SNL review the actions and conduct of the Defendant toward him and their impact on achieving a diverse workforce. He further requested an independent review of Ellis and McIlroy's actions and conduct against him. Dr. Hwang proposed that all Senior Managers participate in diversity and sensitivity training, especially regarding East Asian Americans and other foreign born East Asians.

42. Defendant NTESS took no action regarding Dr. Hwang's action plan by calling for review, investigation and corrective action; but instead terminated his employment.

43. A few hours after receiving Dr. Hwang's action plan and notice of intent to resume his Director duties, on January 29, 2020, at 6:14 pm, McIlroy sent Dr. Hwang an email informing that his action plan was rejected because it was late, and he was terminated from his employment as Director.

44. Dr. Hwang was replaced as Director of Center 8300 with a female (Anglo) who had been a Senior Manager in Center 8300 while Dr. Hwang was Director.

45. Sara Allendorf, who was appointed as Interim Director and later given the full time Director position of 8300, had been criticized by Ellis and McIlroy for her conduct toward support staff. Both Ellis and McIlroy had used Sara Allendorf's behavior as an example of unprofessional conduct and a pattern of behavior that Ellis and McIlroy alleged was re-emerging to criticize Dr. Hwang – yet Ellis and McIlroy turned around and appointed the person they claim was engaging in such unprofessional behavior to be the Director and fired Dr. Hwang.

46. On February 4, 2020, Dr. Hwang filed an Amendment to the EEOC Charge to include a charge of retaliation based on the Defendant's adverse action of refusing to allow

**COMPLAINT; DEMAND FOR JURY TRIAL**

BERMAN NORTH LLP
2225 E. Bayshore Road, Suite 200, Palo Alto, CA 94303
Phone: (650) 320-1685

him to resume his duties as Director within hours of receiving a copy of Dr. Hwang's charge of discrimination and his action plan, which included his complaints and proposed corrective action plans for the Defendant's discriminatory conduct toward him.

47. Dr. Hwang has satisfied all administrative prerequisites for bringing claims of discrimination and retaliation against the Defendant, and this Complaint is timely filed pursuant to 42 U.S.C. §2000(e), *et. seq.* and the California Fair Employment and Housing Act.

## COUNT I

**VIOLATIONS OF TITLE VII (42 U.S.C. §2000(e),** *et. seq.***) - DISCRIMINATION**

48. Dr. Hwang realleges the allegations contained in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. Dr. Hwang is an employee as defined by 42 U.S.C. §2000(e)(5)-(f)(1).

50. NTESS is an employer as defined by 42 U.S.C. §2000(e)(B).

51. Dr. Hwang, is an East Asian American and he belongs to a protected group based upon his race and nationality.

52. Dr. Hwang was qualified for the position of Director of Center 8300.

53. Dr. Hwang's race and/or nationality were a motivating factor in NTESS' decision to terminate his employment.

54. Dr. Hwang was the only East Asian American Director, and upon his removal, he was replaced by a person outside of his protected group.

55. The other Directors were of a different race and nationality and were treated more favorably than Dr. Hwang.

56. Dr. Hwang has lost income and benefits (back pay/front pay) and suffered emotional distress, humiliation and other compensable damages by Defendant's violation of his protected civil rights.

57. NTESS engaged in intentional discrimination against Dr. Hwang through its Senior Managers and NTESS ratified and condoned its Senior Managers reckless indifference to violations of Dr. Hwang's federally protected civil rights.

**COMPLAINT; DEMAND FOR JURY TRIAL**

58. By its acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected his status as an employee, on the basis of Plaintiff's race and national origin in violation of Title VII, 42 U.S.C. §2000e-2(a).

59. As a direct and foreseeable result of Defendant's unlawful discrimination, Plaintiff has suffered, and will continue to suffer, mental and psychological damages in the form of extreme and enduring worry, humiliation, embarrassment, mental anguish and emotional distress, all to his damage in amounts within the jurisdictional limits of this Court, to be proved at trial.

60. As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that he has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses in amounts to be proved at trial.

61. As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided for by 42 U.S.C. §2000e-5(k).

62. The conduct of Defendant, as alleged above, was malicious, fraudulent, despicable, and oppressive and was done with the wrongful intent of injuring Plaintiff, and the persons who committed the unlawful acts described herein were officers, directors and/or managing agents of Defendant and were acting within the scope of their employment, thereby entitling Plaintiff to an award of punitive damages against Defendant in amounts to be proved at trial.

WHEREFORE, Plaintiff respectfully prays for relief as set forth below.

## COUNT II

## RETALIATION IN VIOLATION 42 U.S.C. §2000(e)-(3)

63. Dr. Hwang realleges the allegations contained in paragraphs 48 through 62 of this Complaint as if fully set forth herein.

64. Dr. Hwang engaged in protected activities when he filed a Charge of

BERMAN NORTH LLP
2225 E. Bayshore Road, Suite 200, Palo Alto, CA 94303
Phone: (650) 320-1685

Discrimination with the EEOC on January 25, 2020, and on January 29, 2020, when he submitted his action plan to Ellis and McIlroy expressing concerns about discrimination against him because of his race and nationality.

65. Defendant knew of Dr. Hwang's protected activity on January 29, 2020, when it received a copy of his EEOC Charge and his action plan.

66. Within hours of receiving a copy of Dr. Hwang's EEOC Charge of Discrimination and his action plan, which included his concerns and objections regarding discrimination, Defendant refused to allow Dr. Hwang to return to his position and terminated his employment as Director after he rescinded his retirement.

67. The close proximity between Dr. Hwang's protected activity and the adverse action of terminating his employment establishes a causal connection between Dr. Hwang's protected activities and the adverse employment action of terminating his employment.

68. By its acts and omissions alleged above, Defendant retaliated against Plaintiff for, inter alia, opposing Defendant's harassment, discrimination, and retaliation and complaining about Defendant's discriminatory conduct, in violation of Title VII, 42 U.S.C. §2000e-3(a).

69. As a direct and foreseeable result of Defendant's unlawful retaliation, Plaintiff has suffered, and will continue to suffer, mental and psychological damages in the form of extreme and enduring worry, humiliation, embarrassment, mental anguish and emotional distress, all to his damage in amounts within the jurisdictional limits of this Court, to be proved at trial.

70. As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that he has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses in amounts to be proved at trial.

71. As a result of Defendant's acts of retaliation as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided for by 42 U.S.C. §2000e-5(k).

**COMPLAINT; DEMAND FOR JURY TRIAL**

72. The conduct of Defendant, as alleged above, was malicious, fraudulent, despicable, and oppressive and was done with the wrongful intent of injuring Plaintiff, and the persons who committed the unlawful acts described herein were officers, directors and/or managing agents of Defendant and were acting within the scope of their employment, thereby entitling Plaintiff to an award of punitive damages against Defendant in amounts to be proved at trial.

WHEREFORE, Plaintiff respectfully prays for relief as set forth below.

## COUNT III

## VIOLATIONS OF CAL GOV. CODE §12940 –DISCRIMINATION

73. Dr. Hwang realleges the allegations contained in paragraphs 63 through 72 of this Complaint as if fully set forth herein.

74. Dr. Hwang is an employee as defined by the Fair Employment and Housing Act, Cal Gov. Code §12940 ("FEHA").

75. NTESS is an employer as defined by Cal Gov. Code §12940.

76. Dr. Hwang, is an East Asian American and he belongs to a protected group based upon his race and nationality.

77. Dr. Hwang was qualified for the position of Director of Center 8300.

78. Dr. Hwang's race and/or nationality were substantial motivating factors in NTESS' decision to terminate his employment.

79. Dr. Hwang was the only East Asian American Director, and upon his removal, he was replaced by a person outside of his protected group.

80. The other Directors were of a different race and nationality and were treated more favorably than Dr. Hwang.

81. By their acts and omissions alleged herein, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected his status as an employee in violation of FEHA.

82. As a direct, foreseeable, and proximate result of Defendant's violation of FEHA, Plaintiff has suffered, and will continue to suffer, general physical, mental and

**COMPLAINT; DEMAND FOR JURY TRIAL**

psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish and emotional distress, all to his damage in amounts within the jurisdictional limits of this Court, to be proved at trial.

83. As a direct, foreseeable, and proximate result of Defendant's violation of FEHA, Plaintiff has been injured in that he has suffered, and will continue to suffer, a loss of wages and salary, compensation, employment benefits, career path opportunities, and expenses in amounts to be proved at trial.

84. The conduct of Defendant as alleged above, was malicious, fraudulent, despicable, and oppressive and was done with the wrongful intent of injuring Plaintiff, and the persons who committed the unlawful acts described herein were officers, directors and/or managing agents of Defendant and were acting within the scope of their employment, thereby entitling Plaintiff to an award of punitive damages in amounts to be proved at trial.

85. As a result of Defendant's discriminatory conduct, as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided for by California Government Code §12965(b).

WHEREFORE, Plaintiff respectfully prays for relief as set forth below.

## COUNT IV

## VIOLATIONS OF CAL GOV. CODE §12940 – RETALIATION

86. Dr. Hwang realleges the allegations contained in paragraphs 73 through 85 of this Complaint as if fully set forth herein.

87. Dr. Hwang engaged in protected activity when he filed a Charge of Discrimination with the EEOC on January 25, 2020, and on January 29, 2020, when he submitted his action plan to Defendant expressing concerns about discrimination against him because of his race and nationality.

88. Defendant knew of Dr. Hwang's protected activity on January 29, 2020, when it received a copy of his EEOC Charge and his action plan.

89. Within hours of receiving a copy of Dr. Hwang's EEOC Charge of Discrimination and his action plan, which included his concerns and objections regarding

BERMAN NORTH LLP
2225 E. Bayshore Road, Suite 200, Palo Alto, CA 94303
Phone: (650) 320-1685

discrimination, Defendant refused to allow Dr. Hwang to return to his Director position and terminated his employment as Director after he rescinded his retirement.

90. The close proximity between Dr. Hwang's protected activity and the adverse action of terminating his employment establishes a causal connection between Dr. Hwang's protected activity and the adverse employment action.

91. The Defendant engaged in intentional retaliation against Dr. Hwang through its Senior Managers and NTESS ratified and condoned its Senior Managers' reckless indifference to violations of Dr. Hwang's federally protected civil rights.

92. By its acts and omissions alleged herein, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected his status as an employee in violation of FEHA.

93. As a direct, foreseeable, and proximate result of Defendant's violation of FEHA, Plaintiff has suffered, and will continue to suffer, general physical, mental and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish and emotional distress, all to his damage in amounts within the jurisdictional limits of this Court, to be proved at trial.

94. As a direct, foreseeable, and proximate result of Defendant's violation of FEHA, Plaintiff has been injured in that he has suffered, and will continue to suffer, a loss of wages and salary, compensation, employment benefits, career path opportunities, and expenses in amounts to be proved at trial.

95. The conduct of Defendant as alleged above, was malicious, fraudulent, despicable, and oppressive and was done with the wrongful intent of injuring Plaintiff, and the persons who committed the unlawful acts described herein were officers, directors and/or managing agents of Defendant and were acting within the scope of their employment, thereby entitling Plaintiff to an award of punitive damages in amounts to be proved at trial.

96. As a result of Defendant's retaliatory conduct, as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided for by California Government Code §12965(b).

**COMPLAINT; DEMAND FOR JURY TRIAL**

**BERMAN NORTH LLP**
2225 E. Bayshore Road, Suite 200, Palo Alto, CA 94303
Phone: (650) 320-1685

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant NTESS as set forth below:

1. For compensatory and special damages, including without limitation, a loss of wages and salary, bonuses, compensation, front pay, back pay, employment benefits, career path opportunities, according to proof;

2. For general damages, including without limitation, for mental and emotional distress according to proof;

3. For an award of punitive damages;

4. For reasonable attorneys' fees, costs and expert fees pursuant to, without limitation, those provided by Title VII, 42 U.S.C. §2000e-5(k) and FEHA;

5. For an award of interest, including prejudgment interest, at the legal rate;

6. For costs of suit incurred; and

7. For such other and further relief as the Court deems proper.

Dated: December 1, 2020

BERMAN NORTH LLP

By: _____
Stacy North
Attorneys for Plaintiff
ROBERT HWANG, PH. D

## JURY DEMAND

Plaintiff ROBERT HWANG, PH. D. hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 1, 2020

BERMAN NORTH LLP

By: _____
Stacy North
Attorneys for Plaintiff
ROBERT HWANG, PH. D

**COMPLAINT; DEMAND FOR JURY TRIAL**